**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0053n.06
Filed: January 18, 2006

**No. 05-1208**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) **ON APPEAL FROM THE** |
| *Plaintiff-Appellee*, | ) **UNITED STATES DISTRICT** |
| | ) **COURT FOR THE WESTERN** |
| v. | ) **DISTRICT OF MICHIGAN** |
| | ) |
| SUSAN ELAINE SLOBODA, | ) **OPINION** |
| | ) |
| *Defendant-Appellant*. | ) |

**BEFORE: SILER and CLAY, Circuit Judges; MILLS, District Judge.***

**RICHARD MILLS, District Judge.**

Susan Sloboda appeals the sentence imposed upon the judgment revoking her supervised release. We conclude that the district court committed no error and **AFFIRM**.

## I. BACKGROUND

In December 2001, Defendant-Appellant Susan Sloboda was convicted of conspiracy to defraud the United States and commit an offense against the United

---

*The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

States under 18 U.S.C. § 371, and false declaration made under penalty of perjury, in violation of 26 U.S.C. § 7206(1). On May 28, 2002, following the district court's decision to depart upward, Sloboda was sentenced to 37 months imprisonment. She was also sentenced to serve three years of supervised release, which commenced upon her release from prison on April 27, 2004.

The probation department filed a supervised release violation report on September 7, 2004, which resulted in a summons to appear in court on October 18, 2004. Sloboda failed to appear and was arrested on January 9, 2005 on a subsequent warrant. A hearing on the petition to revoke supervised release was held before the district court on January 31, 2005. The report alleged that Sloboda had violated her supervised release by failing to report to her probation officer, failing to truthfully answer all inquiries of the probation officer, failing to work regularly at a lawful occupation, failing to notify the probation officer of a change of address, failure to be fully employed and failure to pay restitution. She also stopped attending mental health counseling sessions, despite being told to attend the sessions. Moreover, Sloboda continued to associate with her tax protestor co-defendants,[1] in violation of a supervised release condition.

Sloboda contested all aspects of the alleged supervised release violations. She

---

[1]Sloboda was one of thirteen defendants named in a 73-count indictment.

explained to the court her "non-citizenship" in the United States and her denial of any contractual relationship with the court. The Government alleges this "tax protestor-type nonsense" was similar to statements that she made in her original trial, wherein she challenged the court's "jurisdictional parameters and the elements surrounding the nature of this particular business organization." Moreover, Sloboda claimed to be "an ambassador now for the United States of America Republic" and suggested that "perhaps we should involve the president in this." (J.A. at 325).

Based upon the testimony of the probation officer[2] and Sloboda's own testimony, the district court found sufficient evidence of supervised release violations. Sloboda was found guilty of the eleven allegations of the petition and was sentenced to twelve months in the custody of the Bureau of Prisons, followed by eighteen months of supervised release, along with medical and psychiatric care. Sloboda does not dispute that there were violations of supervised release.

Sloboda notes that the second amended supervised release violation report stated that the violations alleged were Grade C and that the recommended sentence of

---

[2]The probation officer testified that Sloboda failed to submit supervision reports for October, November and December 2004, and those she submitted in June and July 2004 were false. He also testified that Sloboda lied about her employment status, falsely claiming that she was an unpaid "volunteer," and also that she failed to advise him of a change in her employment status, and failed to advise him of a change in her residency.

incarceration was three to nine months. The probation officer recommended a sentence of six months incarceration and an additional period of supervised release. Sloboda contends that there is nothing in the record indicating that the district judge read the second amended supervised release violation report, which addressed both the recommended guideline range and the probation officer's personal recommendations.

Counsel for the Government noted that while the Sentencing Guidelines provided for a sentence of three to nine months, the district court retained significant discretion, particularly in light of the Supreme Court's recent decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). In sentencing Sloboda the district court stated, "There's an inability of supervised release to address the characteristics of this defendant, and there is a high risk of continued violation should this Court not step in and find these violations." (J.A. at 323). The court further noted that because of the "nature and consequences of the behavior" of Sloboda, it was necessary for "rather strident measures to be undertaken in order to in some way remediate the circumstances here of continued lawlessness." (J.A. at 335). Following the imposition of sentence, Sloboda filed a notice of appeal.

## II. ANALYSIS

Sloboda contends that the district court's sentence of twelve months

imprisonment followed by 18 months of additional supervised release as punishment for a Grade C violation of supervised release is plainly unreasonable and requires re-sentencing. We review for abuse of discretion a district court's sentence upon revocation of a defendant's supervised release. *United States v. Webb*, 30 F.3d 687, 688 (6th Cir. 1994). Moreover, a sentence of imprisonment upon revocation of supervised release will be affirmed if the district court considered the relevant statutory factors and the sentence is not plainly unreasonable. *United States v. McClellan*, 164 F.3d 308, 309 (6th Cir. 1999).

Sloboda argues that the district court's sentence of twelve months imprisonment, which is three months more than the maximum of the applicable guideline range of six to nine months, and six months more than the probation officer's recommended sentence of six months, is plainly unreasonable. She contends it does not appear that the district court considered the recommendation that she be incarcerated for six months. Moreover, Sloboda claimed at sentencing she had learned all that she could from being incarcerated. Given her particular "world vision" that she is not a citizen of the United States, Sloboda asserts that a reasonable sentence would have involved no term of imprisonment, but would instead have included significant counseling.

The Government argues that the sentence was plainly reasonable. This Court

5

has held that the policy statements in Chapter 7 of the Sentencing Guidelines are merely advisory and the district court need only consider the statements prior to imposing a sentence for revocation of supervised release. *McClellan*, 164 F.3d at 310. The Government further contends that it is not necessary for a district court to expressly refer to the Chapter 7 policy statements when imposing a sentence for revocation of supervised release. It is presumed that the court is familiar with the policy statements and guidelines, especially when violation reports refer to those guidelines and the court states that it has read the report. *United States v. Washington*, 147 F.3d 490, 491-92 (6th Cir. 1998). "By reviewing the supervised release violation report, the court is presumed to have considered the recommended sentencing range set forth in the policy statements." *McClellan*, 164 F.3d at 310. Thus, the Government asserts we can infer that the district court considered the policy statements.

The sentence imposed upon revocation must also include a consideration of the factors listed in 18 U.S.C. § 3553. *Washington*, 147 F.3d at 491. The statutory factors in § 3553(a) include, *inter alia*, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant; [and] (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] (B) to afford adequate deterrence

to criminal conduct."

The Government further notes that a district court need not engage in a "ritualistic incantation to establish consideration of a legal issue." *McClellan*, 164 F.3d at 310. While a district court is not required to make specific findings as to each of the factors considered, it must at least provide an indication of its reasons for imposing a sentence that exceeded the recommended sentencing range. *Id.* No "magic words" are required, but a court must at least provide sufficient reasoning to allow for informed appellate review. *Id.*

This Court has observed that re-sentencing after violations of supervised release was discretionary before *Booker* and is discretionary after *Booker*. Accordingly, it does not involve the "traditional *Booker* problem" of mandatory sentencing guidelines. *United States v. Johnson*, 403 F.3d 813, 817 (6th Cir. 2005). In *Johnson*, the Court declined to decide whether to apply a "reasonableness" standard or a "plainly unreasonable" standard in reviewing a re-sentencing after a supervised release violation. *Id.*

Prior to imposing sentence, the district court heard 45 pages worth of testimony pertaining to Sloboda's violation of supervised release. Moreover, the court was in possession of the violation report prepared by the probation officer. The court observed that supervised release did not address the "characteristics of this defendant"

7

and that "rather strident measures" needed to be taken.

The Government contends that the record clearly demonstrates the district court's basis and reasoning for imposing sentence. The court considered the report prepared by the probation officer and the Guideline Policy Statements prior to imposing sentence. Whether the proper standard of review is for reasonableness or whether the sentence is plainly unreasonable, the Government contends that the sentence in this case satisfies either standard.

We agree with the Government and are unable to conclude that the district court committed any error. As noted above, the district court considered the appropriate information prior to imposing sentence. Moreover, Sloboda did not merely violate one or two conditions of supervised release; rather, the second amended petition included eleven such violations. Given these factors, it is difficult to determine how a term of imprisonment which is merely three months above the maximum of the recommended guideline range could be said to be unreasonable. Some of the statements made by Sloboda would appear to indicate either an unwillingness or an inability to accept the consequences of her actions. To the extent that Sloboda needed mental health counseling, the sentence provided for a mental health evaluation and treatment, including medication.

The district court specifically found that there is an "inability of supervised

release to address the characteristics of this defendant" and that Sloboda represented a "high risk of continued violation." (J.A. at 323). The court determined, therefore, that strident measures were necessary in order to "remediate the circumstances here of continued lawlessness." (J.A. at 335). The statements made by the judge at sentencing demonstrate that he considered how some of the § 3553(a) factors applied to Sloboda in determining her appropriate sentence. Specifically, he considered Sloboda's individual characteristics and the circumstances of the offense. Moreover, the court attempted to impose a sentence which would reflect the seriousness of the offense, in addition providing just punishment and deterring future criminal conduct.

In short, we conclude that the district court's sentence of twelve months imprisonment was not plainly unreasonable. Accordingly, we **AFFIRM** the judgment of the district court.